Margaret Sullivan, Appellee, v. Catherine Sullivan et al., Appellants.

## Gen. No. 7,701.

1. WILLS—*what requisite to show instrument creates charge upon land.* To create a charge upon real estate under a will, it is only necessary that the words reasonably indicate the testator's intention to so charge the land.

2. WILLS—*when instrument deemed to have charged annuity upon land.* An annuity under a will creates a charge upon real estate when the testator made it a charge of 75 cents an acre on the land devised to the other two heirs and the heir who was father and husband of defendants continued to make the per acre payments during his life.

3. WILLS—*lien created by will charging annuity upon land.* An annuity in form of a charge upon land is a lien in the entirety against all the land so that the heirs of the devisee of the land cannot have such charge apportioned among them.

4. WILLS—*when cost of collecting annuity properly charged against heirs of devisee of land charged therewith.* Solicitor's fee of $600 for collection of past due annuity charged on land under a will making the devisee liable for costs of such collection on his

failure to pay the annuity was properly charged against the heirs of the devisee of the land so burdened on their failure to pay the annuity.

5. WILLS—*annuity under will to be decreed payable to annuitant instead of to her attorneys.* An annuity under a will, decreed to the lawful claimant, should be ordered paid to her and not to her attorneys.

Appeal by defendants from the Circuit Court of Woodford county; the Hon. S. R. BAKER, Judge, presiding. Heard in this court at the October term, 1926. Decree affirmed as modified. Opinion filed December 17, 1926.

EDWARD F. RIELY and BARNES, MAGOON & HORTON, for appellants.

FORT & FORT, for appellee.

MR. PRESIDING JUSTICE PARTLOW delivered the opinion of the court.

Appellee, Margaret Sullivan, filed her bill in the circuit court of Woodford county against appellants, Catherine Sullivan, Charles Sullivan, Harry Sullivan, Joseph Sullivan, and Margaret Hupprich, who were the widow and heirs at law of William H. Sullivan, deceased, in which she sought to have a certain annuity due her under the will of her father, Lott Sullivan, made a lien upon certain lands devised to William H. Sullivan by his father Lott Sullivan, also for the payment of solicitor's fee and costs. The case was referred to a master who recommended a decree as prayed in the bill. Exceptions to the report were overruled and a decree was entered as prayed, from which this appeal was prosecuted.

On May 6, 1915, Lott Sullivan made his last will and testament. He died May 22, 1915, and his will was admitted to probate August 2, 1915. By the second clause of the will, the testator devised to his son, William H. Sullivan, 70 acres of land in fee, and 80 acres for life. Following this devise, in the same clause, was

the following: "Said son William Sullivan is to pay to my daughter, Maggie Sullivan, 75c per acre, on the first of every January during her life, to be paid at any bank in the county where my daughter Maggie Sullivan may direct to have same paid. If not paid in due time, my son William Sullivan to pay all costs and collection charges." By the fourth clause, the testator devised to the daughter, Maggie Sullivan, the house and two acres of land where the testator lived, all household goods and furniture, one bay mare, one top buggy and harness, $5,000 in cash followed by this statement: "This is the money where she is drawing interest at the present time."

At the time this will was made Margaret Sullivan was insane. Her father on September 2, 1912, caused to be filed in the county court of Woodford county, a petition against her for insanity. She was adjudged insane and committed to the Peoria State Hospital on September 2, 1913, where she remained until October 1, 1916, when she was found to have regained her reason, was discharged, and her property restored to her.

Upon the admission of the will to probate, William H. Sullivan entered into possession of the lands intended to be devised to him, and continued in possession until his death on July 2, 1921. He regularly paid to Margaret Sullivan the annuity up to the time of his death, but she received no payment on said annuity after January 1, 1921.

There was a mistake in the description of some of the land devised to William H. Sullivan, and for the purpose of correcting this error, on October 1, 1917, Margaret Sullivan and her brother Lott Sullivan, Jr., executed a deed for about 135 acres to William H. Sullivan, thus conveying to him the lands intended to be devised to him by the will. This deed contained the following clause: "The said Margaret Sullivan expressly reserves unto herself, and the said William H. Sullivan, grantee herein, agrees to pay her, the sum of

75c per acre on each and every acre of the above described premises, on the first day of each and every January during her natural life, for the purpose of carrying out the same provision in the last will and testament of the said Lott Sullivan, deceased.''

Margaret Sullivan designated the Minonk State Bank, of Minonk, as the place where such payment should be made, gave due notice of such fact to the parties interested, and demanded payment of the widow and heirs of William H. Sullivan, deceased.

The decree found the facts substantially as above stated, and further found that it was the intention of Lott Sullivan to make the payment of the annuity to Margaret Sullivan a lien upon the lands devised and intended to be devised to William H. Sullivan; that the payment of said annuity was a valid, existing and continuing lien upon all of said lands; that the present owners of said land took the same subject to said lien; that there was due Margaret Sullivan, on January 1, 1926, $806.25; that appellants are liable for the payment of said sum, together with all costs and collection charges, including a reasonable solicitor's fee; that the costs are $94.85, and that a reasonable solicitor's fee is $600; that the total amount of $1,501.10 shall be paid to solicitors for the petitioner herein within 30 days; that if appellants do not pay said sum, that the master in chancery shall sell the lands in and by said will devised, at public auction to the highest and best bidder for cash in hand.

Appellant insists that the decree is erroneous in finding that the will created a charge of 75 cents per acre on the lands devised and intended to be devised to William H. Sullivan.

The evidence shows that the testator at the time the will was executed owned several hundred acres of land and had some personal property. He had two sons and one daughter. At that time the daughter was insane. He naturally wanted to make provision for her

care and comfort. He gave her no real estate except the two acres where he lived. By the second clause of the will he made provision for her as above set forth. By the third clause he devised 240 acres of land to his son Lott Sullivan, Jr., and in the same clause made a provision for the payment of 75 cents per acre on this land similar to the one contained in the second clause. By the fourth clause he gave her certain personal property and $5,000. The will disposed of the whole estate, leaving no fund out of which the annuity could be paid unless it was a charge upon the land, or depended upon the personal obligation of the sons. It is apparent from the language of the will that the testator wanted to make the payments to his daughter specific and certain. He apparently did not want to rely upon the personal obligation of his two sons, hence he imposed a charge of 75 cents per acre on the lands devised to each.

It has been held in many cases that there is no specific language necessary to be used in a will in order to create a charge upon real estate. Any words that reasonably indicate the testator's intention will be held to create such a charge. *Daly v. Wilkie,* 111 Ill. 382; *Reid v. Corrigan,* 143 Ill. 402; *Parsons v. Millar,* 189 Ill. 107; *Williams v. Williams,* 189 Ill. 500; *Spangler v. Newman,* 239 Ill. 616; *Jacobs v. Ditz,* 260 Ill. 98; *Wingfield v. Edwards,* 277 Ill. 176.

In *Daly v. Wilkie, supra,* the will devised certain real estate to a son and payment of $500 by the son to a daughter of the testator within seven years. It was held that the payment was a charge upon the real estate, and that the land could be sold to enforce the payment thereof.

In *Parsons v. Millar, supra,* certain lands were willed to a son provided he pay certain legacies within a specified number of years, and it was held that the son took the title in fee charged with the payment of the legacies.

In *Wingfield v. Edwards, supra,* by the seventh clause, the testator gave the land in fee to his daughters Mae and Martha Wingfield, subject to a life estate to the wife which was later extinguished. The eighth clause was as follows: "It is my will that from the death of my wife that Mae Wingfield and Martha Wingfield, if living, shall pay annually to my daughter Laura E. Edwards a sum equal to one-fourth the net income from above described eighty acres of land so long as they both shall live and hold the same and so long as my daughter Laura E. Edwards shall live." The devisees entered into a contract to sell the land, claiming they had a right to sell it, and thereafter it would not be liable for the payment of the annuity to their sister. The purchaser refused to take the title. The court held that the period during which payments were to be made was as long as the devisees both should live and hold the land and as long as Laura E. Edwards should live, which meant during the joint lives of the parties while the devisees should hold their titles to the land; that the intention of the testator "was that Laura E. Edwards should have one-fourth of whatever the land might produce in the way of income, to be paid to her in money, and not that there should be a mere personal liability of the devisees to pay her a sum of money, ascertained by finding the income from a piece of land having nothing to do with the payments. He certainly did not intend to fix a mere measure of personal liability for the payments but did intend they should be charged upon the land."

Under the authorities cited these payments to Margaret Sullivan were a charge against the land. Not only do we think this is the proper and legal meaning expressed in the will, but it was evidently the interpretation placed upon the will by William H. Sullivan during his lifetime. He not only paid the annuity regularly and promptly, but when the deed was executed to correct the error in description, substantially

the same language was embodied in that deed as was used in the will, with the possible exception that the language in the deed is even more explicit. It is expressly stated that the recital in the deed is for the purpose of carrying out the provisions of the will. If the recital in the deed was for the purpose of carrying out the provisions of the will, then it was the intention of William H. Sullivan, and of the testator, that the payments should not terminate at the death of William H. Sullivan for the reason that the will provided that they should continue during the life of Margaret Sullivan. There was no error in the finding in the decree that the annuity was a charge on the land.

It is insisted that even if the will did create such a charge against the land that the decree should have apportioned the payments among the appellants according to their respective interests in the land as inherited from William H. Sullivan. There is no merit in this contention. When William H. Sullivan obtained title to the land, he accepted it subject to this charge, which was a single charge and covered the entire property. Appellants, as heirs of William H. Sullivan took the same title he had, and subject to whatever charges there were against him. *Ellis v. Dumond,* 259 Ill. 483; *Meins v. Meins,* 288 Ill. 463. The decree merely enforced the payment due as provided in the will. The court had nothing to do with the individual responsibility of the several appellants. That was a matter which did not concern appellee. Her lien was an entirety, so that under a sale made to enforce payment, the purchaser would take all of the title in fee subject only to the payment of the annuity. This was the lien created by the will, and appellants had no right to have it cut down, nor diminished, so that upon the failure to pay a part of the annuity, appellee could only sell a part of the land. Such a construction might require a multiplicity of suits. The decree properly made the annuity a charge against all of the land.

It is next insisted that the court was in error in allowing a solicitor's fee of $600. The will provided that if the legacy "is not paid in due time, my son William Sullivan to pay all costs and collection charges." After the death of William H. Sullivan his heirs refused to make the payments. It was necessary for appellee to begin suit to enforce payment, and thereby she incurred costs and solicitor's fees. She was not responsible for these items of cost. They were caused by the default of appellants and they are in no position to complain that a solicitor's fee was allowed.

The decree provided that the amount of the annuity and solicitor's fee shall be paid to the solicitors for appellee for her use and benefit. It is insisted that the decree should have provided that the solicitor's fee be paid to the solicitors, and that the annuity should be paid to appellee. The annuity was due to appellee and the decree should have so provided. The decree will be so modified in this court and will be affirmed with this modification.

*Decree affirmed as modified.*