The Moody Bible Institute of Chicago, Appellant, v. Robert F. Pettibone et al., Appellees. China Inland Mission et al., Appellees and Cross Appellants. Annie S. T. Hanscomb and Louise Thompson, Appellees and Counterclaimants.

Gen. No. 39,013.

Opinion filed February 19, 1937.

CASTLE, OSBORN & WEISS, of Chicago, for appellant; HARPER E. OSBORN and ALBERT E. HALLETT, JR., of Chicago, of counsel.

FRANK W. SWETT, WILFRED M. DOHERTY and VOSE & LIND, all of Chicago, for cross appellants; WILFRED M. DOHERTY, of counsel.

F. F. and J. V. NORCROSS, of Chicago, for certain appellees; JOHN V. NORCROSS, WILLIAM RUGER and JAMES A. VELDE, all of Chicago, of counsel.

THOMAS C. STRACHAN, JR., of Chicago, for cross appellee Grace Osborne.

MR. JUSTICE McSURELY delivered the opinion of the court.

The Moody Bible Institute of Chicago, plaintiff, filed its complaint as residuary legatee under the will of Henry S. Osborne, deceased, asking that certain legacies be paid in reduced amounts and the residuary estate then turned over to it, subject to the payment of annuities in reduced amounts to two nieces of deceased out of the income.

China Inland Mission, a corporation, Pacific Garden Mission, a corporation, The McKinley Foundation at the University of Illinois, a corporation, and The Christian and Missionary Alliance, a corporation, are legatees and filed answers claiming that they should be paid at once the balance due on the legacies without any reduction.

The two nieces, Annie S. T. Hanscomb and Louise Thompson, filed answers and counterclaims asserting that the annuities of $2,000 to each provided for them in the will were a charge on the entire estate, both *corpus* and income, and should be paid to them without reduction in preference to all other legacies.

Grace Osborne, widow of Frank Osborne, a brother of Henry S. Osborne, filed an answer claiming a balance due her as an annuitant of $2,500 with interest, under a provision of the will.

The case was tried before the chancellor on a stipulation of facts and also evidence taken. A decree was entered finding that the annuities of $2,000 to each of the nieces were a charge against both the corpus and income and should be paid in preference to all other legacies; that Grace Osborne was entitled to receive $2,500 with interest; that no payments be made to the above mentioned legatees except upon orders of the court to be thereafter entered from time to time when it should be shown to the satisfaction of the court that such payments can be made without prejudice to the rights of the annuitants; it was also decreed that no payments should be made at this time to the Moody Bible Institute except upon orders of the court to be subsequently entered. Plaintiff has appealed from this decree and the legatees above mentioned have filed their cross appeal.

All of these appellants argue that the annuities should be paid out of income only and not as a charge upon the *corpus* of the estate, and the cross appel-

lants further assert that Grace Osborne is not entitled to preference over their legacies. The two nieces and Grace Osborne, a sister-in-law of Henry S. Osborne, argue in support of the decree.

Henry S. Osborne, the testator, was a practicing attorney in Chicago for many years and was associated in the practice of law with his brother Frank; he was greatly attached to his brother's five children and his wife, Grace Osborne; he treated the children generously and before his death had given them virtually one-half of his estate.

He had an only sister, Helen E. Thompson, mother of the annuitants; in 1883 Mrs. Thompson's husband became broken in health and the family moved to Kalamazoo, Michigan, in 1885; while they lived in Michigan the testator was almost their sole support; he paid the expenses of the children through college at the University of Michigan, from which Mrs. Hanscomb graduated in 1895, and her sister in 1898; after they graduated both sisters taught school, Louise Thompson until 1918 and Mrs. Hanscomb until 1921; they received no teacher's pension after they ceased teaching; their mother, Helen E. Thompson, died in 1917; at the time of the trial, in 1935, Mrs. Hanscomb was 66 years of age and her sister Louise Thompson was 59 years of age.

Henry S. Osborne died February 5, 1914, his wife having pre-deceased him, leaving no children, his will was admitted to probate in April, 1914, and letters were issued to Robert F. Pettibone and Harold S. Osborne, executors; the executors filed the necessary accounts; the final account was filed January 15, 1920, nearly six years after the testator's death; this account was approved in April, 1920, and the estate then in the hands of the executors was turned over to themselves as trustees and they were discharged as executors; while in the probate court and afterward the trustees paid a considerable portion of the legacies

given by the will, and during the entire period, from the date of the testator's death in 1914 until the filing of this complaint in December, 1933, the annuities were paid to the respective annuitants according to the terms of the will; no objection was made during these 20 years to anything done or omitted to be done by the executors or trustees. All the cash legatees and the residuary legatee by their silence seem to have agreed that the testator had not indicated under what conditions or when the cash legatees should be paid and the balance of the estate turned over to the residuary legatee.

Plaintiff argues that the cash legatees should have been paid in November, 1919, when there was sufficient cash for this purpose in the hands of the trustees, and that then the balance should have been paid over to it. The cash legatees, on the other hand, assert that the trustees were to administer the trust only so long as they could pay the legacies out of the income. The clear language of the will is opposed to either of these contentions. Paragraph 13 of the will provides that the trustees—"may defer any or all the legacies herein provided for or such particular ones as they shall deem right and pay the same or part of the same out of the income to be received from the estate." And it was suggested that certain real estate be sold and the proceeds be used "in paying such of the legacies in whole or in part or pro rata as they shall think best, and that the other legacies or such, or such parts, of them as they shall think best, be deferred and paid out of the net income from the estate. . . ." The testator did not fix any specific time for the payment of the legacies but left this to the sound discretion of the trustees.

The provisions relating to the annuities are as follows:

"11. Some years ago I divided off and gave to the children of my brother Frank one half of nearly all

the property I then possessed and have in some other ways looked after them pecuniarily. They are also otherwise provided for, while my sister and her family and my brother are not. For this reason, and for this reason only, I therefore omit them from the further distribution of property except as herein expressly provided for, although they have and know they have my most tender love and constant prayers.

"12. I give the following annuities to be paid quarterly or at such other periods as those interested may agree upon:

"(1) To my sister Helen E. Thompson I give five thousand dollars per year for each year of her natural life; and upon her decease, I give to each of her children who shall survive her two thousand dollars per year for each year of such child's natural life; also an additional one thousand, making in all three thousand dollars per year to the last survivor, from the death of her last sister, for the remainder of such survivor's natural life.

"(2) To my brother, Frank S. Osborne, I give two thousand dollars per year for each year of his natural life; and upon his decease I give to his wife Grace one thousand dollars per year for five years thereafter should she live so long and at the end of such five years should she then be living I give her, absolutely, five thousand dollars, her annuity to continue so long as she shall live not exceeding the five years.

"(3) The foregoing annuities I desire to be charged upon my interest in the rentals of the property known as the 'Open Board Property', so far as the same will go and suggest that if feasible a portion of such rental sufficient for the purpose or for some part thereof be assigned and set off to each annuitant. And for the balance of such annuities I suggest (though I do not direct) that, if it seem wise to my trustees, Rosehill Cemetery stock be set off in trust

sufficient so that the dividends therefrom will pay such balance of annuities.''

By paragraph 13 it is provided that the trustees should manage the estate, with power to sell or incumber, and to have all the powers of an absolute owner, and with ''the proceeds thereof to carry out the provisions of this will''; that the trustees may defer paying any or all legacies and pay the same out of the income; the testator also suggested that the homestead and certain other properties be realized upon and converted into money and the proceeds applied in paying such of the legacies in whole or in part or pro rata as they shall think best, and that the other legacies or such, or such parts, of them as they shall think best, be deferred and paid out of the net income from the estate, ''saving that I desire the annuities to my sister (or her children as the case may be) and to my brother (or his widow should he decease) to be paid from the time of my decease.'' Then follows the provision that when the legatees shall have been paid in full the trustees shall convey ''all the residue of said estate and property to the Moody Bible Institute of Chicago (charged with the payment of the annuities herein provided for) to be used by it in its work for Jesus Christ, without restriction, and I give, devise and bequeath the same upon the payment of said legacies (not including annuities in said term legacies) to said Moody Bible Institute of Chicago.''

It is well established that whether, under a will, an annuity is payable out of income only or out of principal and income, is always a question of the testator's intention as shown by the will. And in this connection we quote, as very pertinent, from the old case of *Gulliver v. Poyntz,* 3 Wils. (Eng.) 141: ''Cases in the books upon wills may serve to guide us with respect to general rules in the construction of devises in wills, but unless a case cited be in every respect

directly in point, and agree in every circumstance with that in question, it will have little or no weight with the court; who always look upon the intention of the testator as the polar star directing them in the construction of wills.''

However, there are a large number of cases supporting the proposition that where a will contains a gift of legacies and annuities, followed by a general devise of the residue *en masse,* there is thereby created a charge of both upon the *corpus.* In *Reid v. Corrigan,* 143 Ill. 402, a legacy was given to the testator's niece, followed by a devise of the residue of the estate; it was held that the legacy was a charge upon and payable out of the residuary devise. In *Stickel v. Crane,* 189 Ill. 211, it was held that it was a rule of property that, if legacies are given generally and the residue is afterward given in one mass, the legacies are a charge on the residuary estate; that this rests upon the principle that the whole estate is considered as one mass; that part of the mass is represented by legacies and that ''what is afterward given is minus what has been before given, and therefore given subject to the prior gift.'' See also *Williams v. Williams,* 189 Ill. 500.

This rule with respect to legacies applies also to annuities. This is held in *Einbecker v. Einbecker,* 162 Ill. 267, 276, where the court said:

'' 'If there is anything to show that the *corpus* is looked upon as entire after the annuitant's death, . . . it is not liable to make good arrears.' (Theobald on Law of Wills, p. 637). 'If there is a direction to set apart a sum of money in order to pay an annuity out of the dividend with a gift over, the annuitant is not entitled to come upon the *corpus.*' (Id. p. 636). 'But if there is a gift of an annuity and a residuary gift, the annuity takes precedence, and the whole loss falls on the residuary legatee.' (2 Williams on Executors,

9th ed., p. 1212). 'If there is a clear gift of an annuity, a direction to set a fund apart to secure it, which is to fall into the residue upon the death of the annuitant, does not disentitle the annuitant to have arrears made up out of *corpus,* since the direction is merely a means to the end.' (Theobald on Law of Wills, 2nd ed., p. 636). 'If the capital is given over subject to or after payment of the annuities, the *corpus* is liable.' (Id. p. 637).

"If the will provides that a certain sum be paid annually or monthly to the widow, and that, at her death, the residue be divided between, or paid over to, other persons, the intention would seem to be that the capital shall be drawn upon to make up the deficiency in the annuity, or monthly or yearly allowance. In such case, the residue is what is left of the *corpus* after it has been used for the purpose of making up the deficiencies in the annuity. But where the terms of the gift over show that the testator intended the fund to be continued in its integrity during the life of the annuitant, and in that state to go over, the *corpus* cannot be resorted to to make up a deficiency in the annuity." This was followed with approval in *Gee v. Gee,* 204 Ill. 588, where the will charged real estate with the payment of the annuity; the court held that the annuity was a continuing charge upon the real estate until all arrearages of the annuity should be paid and that it was not important "that it is possible the entire value of the real estate may, upon the theory we have adopted, be consumed in the satisfaction of this annuity. . . ." In *Wingfield v. Edwards,* 277 Ill. 176, it was held that it was not necessary that the will should provide in express terms that the payments of an annuity should be charged upon the land, but such an intention may appear from the language of the will, and that where there is a devise of a residuary estate after prior gifts an in-

tention that the residuary estate shall be charged with the prior gifts is manifest. It is the rule that no specific language need be used in a will in order to create a charge upon real estate. Any words that reasonably indicate the testator's intention will be held to create such a charge. *Sullivan v. Sullivan,* 242 Ill. App. 501; *In re Estate of Schwartz,* 275 Ill. App. 374; *Additon v. Smith,* 83 Me. 551; *Smith v. Fellows,* 131 Mass. 20, and *Burnet v. Whitehouse,* 283 U. S. 148. And in Thompson on Construction of Wills (1928), page 561, the author says:

"There is a substantial distinction between 'annuities' and trusts for the payment of income to beneficiaries. Where an annuity is created the annuitant is entitled to the stipulated payments per annum, irrespective of the earnings derived from a particular *corpus* or fund. Where a trust fund is created, however, the beneficiaries are entitled to the entire income earned on the portion mentioned in the will. In the case of annuities, where the income is insufficient, the executors or trustees may encroach upon the principal, even in the absence of specific directions."

Page on Wills, sec. 1036, vol. 2 (2d ed.) says:

"One of the chief points of difference in effect between a gift of income and an annuity is, that a gift of income fails if the principal of the estate is not sufficient on investment to pay the income bequeathed; while an annuity does not fail because the net income is insufficient to pay it in full, but is payable out of the principal, unless the principal is disposed of by the will in such a way that the gift thereof is on an equality with the annuity or has priority over it in case of abatement, or unless the will shows an intention to pay the annuity out of the income alone. An annuity is to be paid out of the principal of a residuary gift. Where an annuity is given to a beneficiary, and testator directs his estate to be so invested as to pro-

duce such annuity, it is held that in case the income of the estate is not sufficient to pay the annuity in full the principal should be used to pay it. Where a testator directs that a certain fund be so invested as to produce a given annuity, it is held that in case of a deficiency of the income from the fund the principal may be drawn upon." (Citing cases.)

Among the many other cases supporting the proposition that an annuity is a fixed amount directed to be paid absolutely and out of the principal if necessary, are *Johnston's Estate*, 264 Pa. 71, *In re Stewart's Estate*, 255 N. Y. S. 389, *In re Anderson's Estate*, 256 N. Y. S. 529, *In re Hardy's Estate*, 86 N. J. Eq. 405. In a note appended to this last case, as reported in L. R. A. 1917 E at page 584, it is said: "The fact that the annuitant was a prime object of the testator's bounty, or that the annuity was evidently intended for the maintenance of the annuitant, is a circumstance strongly tending to show that it was the testator's intention that the annuity should be paid in full and therefore, if necessary, out of the *corpus*." See also 40 Cyc. 1631. Many other cases might be cited.

The cases cited by plaintiff and the cross appellants involve wills where it was clearly expressed that the annuities should be paid out of the income only and not out of the *corpus* of the estate. Such cases are *Einbecker v. Einbecker*, 162 Ill. 267, *Irwin v. Wollpert*, 128 Ill. 527, and *DeHaven v. Sherman*, 131 Ill. 115.

The provision of the will that "when the legacies shall have been paid in full my trustees shall convey and deliver all the residue" to the Moody Bible Institute of Chicago, "charged with the payment of the annuities herein provided for," simply states the time when the residue shall be conveyed and has no reference to the time when the annuities become a charge upon the *corpus* of the estate. The words, "charged with the payment of the annuities herein provided

for'' mean a charge already made upon the *corpus* and not a charge deferred to the time when the legacies should be paid in full. This is not inconsistent with subdivision 3 of paragraph 12 of the will which suggests that the annuities be charged ''upon my interest in the rentals of the property known as the 'Open Board Property' so far as the same will go and suggest that if feasible a portion of such rental sufficient for the purpose or for some part thereof be assigned and set off to each annuitant. And for the balance of such annuities'' the testator suggests that if the trustees think best the Rosehill Cemetery stock be set off so that the dividends will pay the balance of the annuities. It is in evidence that the dividends from the Open Board Property would not be sufficient to pay the annuities in full. In fact, at the time of the testator's death the income from this asset was $5,000 less than the amount of the annuities. It is also in evidence that the testator sold his Rosehill Cemetery stock about two years before his death, so that no dividends from this stock came into the hands of the trustees.

The testator gave his nieces annuities in order to provide them with support and maintenance, and they were payable at all events, and the trustees in their discretion might defer the payment of the cash legacies in order to insure the payments of the annuities. Bearing upon this is paragraph 11 of the will:

''Some years ago I divided off and gave to the children of my brother Frank one-half of nearly all the property I then possessed and have in some other ways looked after them pecuniarily. They are also otherwise provided for, while my sister and her family and my brother are not. For this reason, and for this reason only, I therefore omit them from the further distribution of property except as herein expressly provided for, although they have and know they have my most tender love and constant prayers.'' Obviously,

the testator felt an obligation to provide for the family of his brother Frank and the family of his sister Helen. In this provision the testator explains why he has left nothing in his will to the children of his brother Frank, as he has already given one-half of his estate to them, and while they had already been provided for the family of his sister had not, and the testator clearly intended to make provision for them, substantially balancing his gifts to the family of his brother Frank by provisions for his sister's family.

The language of this paragraph evidences an intention of the testator to provide for his sister's family. The word "provide," as is well known, means the furnishing of food, clothing and dwelling, and of all that may be needed to enable a person to live comfortably. *Taylor v. Elder*, 39 Ohio 535, 539; see also 50 C. J. 828. In order to provide in this manner for his sister's children the testator must have meant that the annuities for this purpose must be paid at all events, and continuously, otherwise the provision for them would not be fulfilled.

In paragraph 13 the testator says that the trustees may defer the payment of any or all legacies as they shall think best, but immediately follows this provision with the language, "saving that I desire the annuities to my sister (or her children as the case may be) and to my brother (or his widow should he decease) to be paid from the time of my decease." This means that while the payment of the legacies could be deferred, the payment of the annuities could not be.

As a general rule, legacies to relatives, who are otherwise unprovided for, are given preference over other legacies to those who have no natural claim on the testator's bounty. Some cases hold to the contrary, but this rule has been applied in *Scofield v. Adams*, 12 Hun. (N. Y.) 366, where the court said:

"The rule of law enunciated in these (cases cited) is reasonable, as it is natural and in accordance with

common sentiments of affection, which cannot be entirely ignored in giving construction to wills. It commends itself to the conscience as just and right. It would be unnatural not to intend special favor in the bestowal of bounties to those who were strong in the affections and dependent upon kind regard. So it will be presumed that legacies for the *support and maintenance* of those standing in near relations to the testator, more or less dependent upon his bounty, were intended by him to have preference over others of a general character.''

In *Kincaid v. Moore,* 233 Ill. 584, 596, it was said that where the controversy is between the heir who is a beneficiary and another beneficiary having no claims upon the testator, that interpretation of the will will be adopted which prefers the kin of the testator to strangers.

The discretion given to the trustees to defer the payment of the legacies was manifestly for the benefit of the annuitants. The testator knew that his sister Helen's children might live for many years; at the time of the testator's death the total amount of the annuities to his kinfolk would require a total of $8,000 a year, which would require, at five per cent, a capital fund of $160,000. The estate was inventoried in the probate court at something over $188,000, while at the time of the trial, after partial payment of some of the legacies, the trust estate amounted to something over $50,000; the reason for this shrinkage will be stated later. Under these circumstances the discretion to the trustees to defer the payment of the legacies was in order to preserve a *corpus* to insure payment of the annuities. This is the only reasonable explanation of the permission to defer the payment of the legacies. Postponing payment would certainly not be for the benefit of the cash legatees, nor would any advantage inure to the residuary legatee from this postponement.

The inevitable result of ordering that the cash legatees be paid at once would be the destruction of the annuities to the testator's nieces. To allow such a result to the two elderly nieces would do extreme violence to the manifest intention of the testator.

Consideration of all the circumstances surrounding the making of the will and applying the law as above stated leads clearly to the conclusion that the annuities are a primary charge upon both the income and *corpus* of the estate.

The record shows that through the misconduct of trustee Robert F. Pettibone the trust estate has suffered a substantial loss. Pettibone died April 15, 1934, and the account filed in his estate shows that securities amounting to $34,000, together with interest, which had belonged to the trust estate of Henry S. Osborne, deceased, were missing. The record shows that some of these securities were cashed by Robert F. Pettibone and deposited in his personal account. The First National Bank of Chicago is now sole successor trustee. Plaintiff argues that the present shrunken condition of the estate is not due to a fundamental insufficiency of assets or to a marked decline, but is due to an actual *devastavit* by the trustees themselves, and that such loss should, in equity, be borne proportionately by the annuitants, legatees and the residuary estate. A *"devastavit"* is a mismanagement or misappropriation in an estate resulting in loss. 3 Words and Phrases, 2041. It should be noted that while the estate has now a diminished value of approximately something over $50,000, this may be sufficient to pay not only annuities but also all of the unpaid cash legacies. Mrs. Hanscomb, one of the nieces, is now approximately 68 years of age, and the other niece, Louise Thompson, 61 years. It cannot be told at this time how much longer they will live and how long the annuities will continue. It would therefore be improper to decree an abatement

of the annuities because of a *devastavit* on the assumption that there may be an ultimate deficiency of assets.

The general rule is that losses suffered by an estate in the course of administration must fall upon the residuary legatee. *Lewis v. Sedgwick,* 223 Ill. 213, and *Kincaid v. Moore,* 233 Ill. 584. In *Clement v. Whisnant,* 208 N. C. 167, the will gave a large number of legacies to relatives and to certain charitable organizations,—a school and a church; the executor misappropriated approximately $40,000, with the resulting contest as to whether this loss should fall on the charities or the relatives and friends; the court held that the loss should not fall upon the family, following *Silsby v. Young and Silsby,* 3 Cranch (U. S.) 249. In *Farmers' Loan & Trust Co. v. McCarthy,* 113 N. Y. S. 207, the executor misappropriated part of the estate; the trial court held that the *devastavit* should be borne ratably by all the legatees and the residuary, but this was reversed on appeal, and the court held that the specific legacies should be paid and that the *devastavit* did not affect the situation. *Buffalo Trust Co. v. Leonard,* 154 N. Y. 141. Two of the cases cited by plaintiff were subsequently reversed. See *Baker v. Farmer, L. R.* (Eng.) vol. 3, 537, and *Farmers' Loan & Trust Co. v. McCarthy,* 113 N. Y. S. 207. It is in accord with reason and authority to hold that where an abatement is required because of a deficiency of assets from *devastavit* or any other cause, the loss falls on the residuary estate.

What we have said with reference to the annuities to the two nieces of the testator also applies to the provisions of the will with reference to Grace Osborne, widow of testator's brother Frank.

Paragraph 12 of the will provides:

"I give the following annuities to be paid quarterly or at such other periods as those interested may agree upon:

"(1) . . .

"(2) To my brother, Frank S. Osborne, I give two thousand dollars per year for each year of his natural life; and upon his decease I give to his wife Grace one thousand dollars per year for five years thereafter should she live so long and at the end of such five years should she then be living I give her, absolutely, five thousand dollars, her annuity to continue so long as she shall live not exceeding the five years."

The annuity for Frank Osborne was paid until he died in 1926; after his death the trustees paid his widow, Grace Osborne, five annual payments of $1,000 each and $2,500, being one-half of the final $5,000 payment provided for in the will. The testator has described the payments to Grace Osborne as an annuity, which shall continue not exceeding five years. The provisions for her are quite different from the provisions for the payment of the cash legatees. There is no provision that the payment of this annuity may be postponed, as is the case with reference to the cash legacies. The whole context of the will and the relationship of the parties clearly show that the payments to Grace Osborne were to be annuities and should be treated in the same class with his nieces, Mrs. Hanscomb and Louise Thompson.

Plaintiff's counsel argue for the allowance of solicitors' fees. The original bill of complaint was to require the trustees to account, and plaintiff's amended and supplemental complaint asked for a construction of the will in the light of the depreciated trust estate. This amended and supplemental complaint alleges that if it had not been for the *devastavit* there would be ample funds to pay all legatees in full and there would have been no need for a construction of the will. The chancellor found that there was no ambiguity in the will and that although the present plight of the estate was probably not foreseen, an examination of the will

reveals a clear intention by the testator to provide for his relatives, and that there being no ambiguity in the will there was nothing requiring construction. *Stevenson v. Stevenson,* 285 Ill. 486. This conclusion is supported by many decided cases. In *Bartlett v. Mutual Ben. Life Ins. Co.,* 358 Ill. 452, it was held that the will did not require any construction by the court as the suit was instituted only to enforce a supposed interest of the complainant "almost forty years after the death of the testator." The present case is to enforce a claimed interest almost twenty years after the death of Henry Osborne. In *Power v. Power,* 296 Ill. 611, the court disallowed solicitor's fees, holding that the suit was brought solely for the benefit of the plaintiff. Among the many other cases denying solicitor's fees under like circumstances are *Warren v. Warren,* 279 Ill. 217, *Greenough v. Greenough,* 284 Ill. 416, *Billings v. Warren,* 216 Ill. 281, *Jennings v. Hills,* 247 Ill. App. 98, and *Farwell v. Illinois Merchants Trust Co.,* 264 Ill. App. 49.

Moreover, there is no evidence from which the services of plaintiff's counsel in prosecuting a suit for construction of the will could be determined; there is no evidence as to how much time was spent on the accounting issue. There is point in the suggestion that the claim that plaintiff's solicitors be allowed $6,600 for services is inequitable and out of all proportion to the value of the services rendered to the estate and would impose an unjust charge on a trust estate already burdened with substantial losses.

We are of the opinion that the will of Henry S. Osborne, deceased, is clear and free from any ambiguity; the decree of the trial court is justified and it is affirmed.

*Affirmed.*

MATCHETT, P. J., and O'CONNOR, J., concur.