Centa Schloesser, Trustee under and by virtue of the terms of Last Will and Testament of John W. Schloesser, Deceased, Plaintiff, v. Gladys Schloesser et al., Defendants.

Gladys Schloesser et al., Counterclaimants, v. Centa Schloesser, et al. Counterdefendants.

Gen. No. 43,582.

Opinion filed November 19, 1946.
Released for publication December 3, 1946.

KNAPP, CUSHING, HERSHBERGER & STEVENSON, of Chicago, for appellants; WILLIAM W. FULLAGAR, of Chicago, of counsel.

A. F. W. SIEBEL and ARTHUR F. SIEBEL, both of Chicago, for certain appellees.

MR. JUSTICE SCANLAN delivered the opinion of the court.

The complaint in the instant case was filed by Centa Schloesser, trustee under and by virtue of the terms of the last will and testament of John W. Schloesser, deceased, and it prays for the construction of certain provisions of the last will and testament of John W.

Schloesser. Defendants Carl M. Schloesser and Jennie Riegel are children of Centa Schloesser by her marriage to John W. Schloesser. Blanche P. Rich, Edward Schloesser and William J. Schloesser are children of John W. Schloesser by a prior marriage. Defendant Gladys Schloesser is the widow of Harry E. Schloesser, deceased, who was a son of John W. Schloesser by a prior marriage. Defendant John W. Schloesser, a minor, is the son of Harry E. Schloesser and Gladys Schloesser. The will named three trustees to execute the trust created by the will, The Central Trust Company of Illinois, Harry E. Schloesser (son) and Centa Schloesser (the widow). The Central Trust Company became disqualified and Harry E. Schloesser died. Centa Schloesser, in accordance with the provisions of the will, continued to function as trustee. The following are the pertinent provisions of the will:

"Second: I give and bequeath unto my beloved wife, Centa Schloesser, an annual income of Six Thousand Dollars ($6,000), to be paid to her in monthly installments of Five Hundred Dollars ($500) each, on the first day of each and every month during her natural life, *as specified in the Fourth Paragraph of this my Last Will.* It is my express will that the provision herein made for my wife, shall be in lieu of her rights of homestead, dower and widow's award, and any and all claims and demands in and against my estate by virtue of being my surviving wife.

"Third: In the event my beloved wife, Centa Schloesser, sees fit to renounce and does renounce the provision made for her in this my last Will and in lieu thereof accepts her share of my estate as provided for by the statutes and laws of the State of Illinois, I give, devise and bequeath unto my children, Carl M. Schloesser and Jennie E. Riegel, wife of Jacob Riegel, one dollar each, and to my children Harry E. Schloesser, Blanche P. Schloesser, William J. Schloesser and Ed-

ward Schloesser, all the rest, residue and remainder of my estate, real, personal and mixed of every name, nature and kind, wheresoever same may be situated.

"Fourth: In the event and upon the condition that my beloved wife, Centa Schloesser accepts the provision as made for her in the Second Paragraph of this my last Will, I give, devise and bequeath unto my beloved wife, Centa Schloesser, my son Harry E. Schloesser and the Central Trust Company of Illinois, (an Illinois corporation), who are hereby constituted Trustees of my estate, all my property, real, personal and mixed, of every kind, nature and character, wheresoever the same may be situated, at the time of my decease and in which I then have or might have any right, title, claim, interest or demand, but, nevertheless, in trust and upon the following trusts and with the following powers and subject to the following provisions, to-wit:

"To take charge, control and management thereof and collect the income therefrom, and whenever in their discretion they deem it proper to bargain, sell, encumber, exchange, partition, lease for any term and beyond the termination of this trust not exceeding one hundred ninety eight (198) years, build upon, improve, restore, repair and convey the same to such persons and upon such terms and for such purposes as they deem fit; to make all deeds and instruments in writing necessary and ample to vest in the purchaser or grantee the absolute and fee simple title, or any other or lesser title thereto or therein as they may see fit, and in no event need such purchaser or grantee see to the application of his or her purchase or other money.

"I do hereby empower and authorize my said Trustees to change the nature of the investment of the assets of my estate as often as they think proper, and for the best interests of my said estate, but I expressly direct that any exercise of the authority herein given

to my said Trustees shall be exercised by them jointly while they are all acting as such trustees and by two survivors of them while both such survivors are acting as such Trustees. In the event of the death, inability or refusal of any of my said Trustees to act as Trustees under this Will, I direct that the remaining Trustee or Trustees under this Will, shall exercise each and every of the powers and duties provided for in this Will for my said Trustees, to the same extent and with the same force and effect as if he, she or they had been named as sole Trustee or Trustees in this Will.

*"I hereby direct my said Trustees to pay unto my beloved wife, Centa Schloesser, the sum of Six Thousand Dollars ($6,000) annually, in monthly installments of Five Hundred Dollars ($500) each on the first day of each and every month during her natural life.*

"I further direct that the balance of the income of my estate after deducting the payments to my beloved wife, Centa Schloesser and all other ~~many~~ expenses incurred in executing this trust, be paid annually to my six children, share and share alike, in the event that any of said children should die without leaving issue surviving him or her said child's share shall be equally divided between the surviving children, but in the event that any of my said children shall die leaving issue of their body surviving then said issue shall take such parents share.

"Correction made before execution. J. W. Schloesser

"I further direct that upon the death of my beloved wife, Centa Schloesser, that my said Trustees divide equally share and share alike all of my said estate then in their charge and control among my children. In case of the death of any of my said children prior to the time said child or children shall be entitled to receive his or her share or shares as aforesaid, then such share or shares shall go to his or her issue, and

in case there be no such issue, then such share or shares shall be distributed among my remaining children or their issue, as the case may be.

"Fifth: Should any legatee or devisee of my last Will attempt to set aside the terms and conditions of this my Will, and have the same declared invalid, then I revoke and declare null and void any and all bequests and devises herein contained in favor of the legatee or devisee, so attempting, and I direct that said legatee or devisee, so attempting, receive no part of my estate whatsoever, such devise or bequest shall be equally divided between the other devisees and legatees herein named." (Italics ours. The signature of the testator appears in the margin of each page of the will. The paragraph marked "[A]" is so marked by us for convenience in hereinafter referring to it.)

The chancellor entered the following decree:

"This cause coming on to be heard on the complaint, the answer, and counterclaim of certain defendants, the reply to said answer and answer to said counterclaim of the plaintiff, and the amendments to the complaint, answer and counterclaim, and on the answer and counterclaim of the guardian *ad litem*, and reply and answer of plaintiff thereto, and the Court being fully advised in the premises, after arguments of counsel,

"Finds: That the pleadings filed in this cause present an issue requiring the construction of the Last Will and Testament of John W. Schloesser, deceased, as to whether or not the decedent intended by the terms of said Last Will and Testament, to confer the right and authority on the trustee to pay to Centa Schloesser as the surviving widow of the said John W. Schloesser, monies on account of the bequests made to her therein, as 'an annual income of Six Thousand Dollars ($6,000.00) to be paid to her in monthly installments of Five Hundred Dollars ($500.00) each' out of the principal or corpus of said trust estate, after

the income thereof is exhausted in payments of prior installments to her, and expenses of the trust as they may have accrued, and upon due consideration thereof, it is hereby

"Ordered, adjudged and decreed that by and under the terms and provisions of the Last Will and Testament of John W. Schloesser, and the trust therein and thereby created, Centa Schloesser, the sole surviving trustee thereunder, in pursuance of the provisions of said trust, has the right as trustee to pay to herself as such surviving widow of John W. Schloesser 'an annual income of Six Thousand Dollars ($6,000.00), to be paid to her in monthly installments of Five Hundred Dollars ($500.00) each,' as provided for in said Last Will and Testament, or any part or portion thereof out of the principal or corpus of said trust estate, after the income thereof has been entirely exhausted in making payments of installments accruing, and the expenses of said trust, and it is further

"Ordered, adjudged and decreed that the cross complaint of Gladys Schloesser, John W. Schloesser, a minor, by George Lane, his guardian *ad litem*, Blanche P. Reich, Edward Schloesser, and William J. Schloesser, be, and the same is hereby dismissed for want of equity. . . ."

Blanche P. Rich, Edward Schloesser and William J. Schloesser, defendants, appeal from the decree. The children of the testator by Centa Schloesser did not join in the appeal.

During the hearing before the chancellor plaintiff offered several depositions as testimony tending to prove the intention of the testator, but the chancellor held that the intention of the testator clearly appeared from the language of the will and he refused to consider the depositions.

■■ Appellants contend that the intention of the testator "must be ascertained from the language of the will." Plaintiff argues that that principle of law

is subject to the qualification that if it becomes necessary the will must be considered in the light of the circumstances surrounding the testator at the time he made it. In *Quigley v. Quigley,* 370 Ill. 151, the court states (pp. 152, 153): "In determining the interests created by the will, we must ascertain and give effect to the intention of the testatrix as expressed by all the provisions of the will, interpreted in view of the circumstances surrounding the testatrix. (*Hollenbeck v. Smith,* 231 Ill. 484.)" *Cahill v. Michael,* 381 Ill. 395, 402, follows the rule stated in the *Quigley* case. In the foregoing cases it is also held that if the language of the will is clear the court will not consider the surrounding circumstances for the purpose of varying an intention clearly expressed. The position of appellants is "that it was the intention of the testator to have the payments in question only paid out of the income produced by the trust estate and not out of the corpus thereof." The position of plaintiff is that where there is "a gift of an annuity without expressly limiting the payment of the same from income, the annuity must be paid from any funds on hand, whether income or corpus of the estate." As we view it, the question before us may be stated as follows: Did the testator, when he gave and bequeathed to his wife, Centa Schloesser, an annual income of $6,000, intend to thereby create an annuity for her, to be paid absolutely, and out of the principal or corpus, if necessary?

The following facts appear from the language of the will: Plaintiff was the beloved wife of the testator, the mother of several of his children, and the primary object of his bounty. Throughout the will the testator manifests a purpose to make ample and certain provision for his wife during her life, and it must be noted that plaintiff, by accepting the provision made for her in the will, waived "her rights of homestead, dower and widow's award, and any and all claims and demands in and against my estate by virtue of being my

surviving wife.'' The testator showed trust and confidence in his wife by naming her as one of the trustees.

It appears that the entire estate of the testator consisted of a business building on Broadway, in the Wilson avenue district; an old homestead on Magnolia avenue, and five vacant lots on the outskirts of Chicago. The Broadway property was mortgaged for $15,000 and the Magnolia avenue property was mortgaged for $5,000. The Broadway property was leased and the lessee had made an advanced rent payment of $15,000 which was to apply upon the rent due at the end of the term, but this sum was not retained intact by the testator. Interest was payable to the lessee upon the rent advanced, and interest was also payable upon the two mortgages. Since the death of the testator the tenant in the Broadway property has vacated the premises. The rent income from the Magnolia avenue property was $60 a month. It became necessary to sell all of the three pieces of real estate. The Broadway property sold for $30,000, the Magnolia avenue property for $6,000, and the vacant lots for sums approximating $600 a lot. For some time the widow has not received any payments upon her bequest and there are now no funds left in the estate from which to make the payments.

''The legal definition of the word 'annuity' has been the cause of puzzlement of mind, and there is a wealth of embarrassment in the decisions of the courts. At common law an annuity is a yearly sum charged on the person of the grantor. The term has lost its primary meaning, however, and no longer means a yearly payment of a certain sum of money granted to another in fee, or for life, or for years, and chargeable only on the person of the grantor, and in its broader sense designates a fixed sum, granted or bequeathed, payable periodically, but not necessarily annually; and it may be made a charge on real estate as well as on the person if that is the intention of the parties or if the result

follows by operation of law.'' (3 C. J. S. (Annuities) pp. 1373, 1374. See, also, *Routt v. Newman,* 253 Ill. 185, 188; 2 A. & E. Encycl. of L. (2d) 387; *Estate of Apple,* 66 Cal. 432, 438.)

The subject of annuities was exhaustively considered by Mr. Justice McSURELY in *Moody Bible Institute v. Pettibone,* 289 Ill. App. 69, but it would unduly lengthen this opinion to cite all that is therein said upon the subject. We quote, however, the following (pp. 75, 76, 78, 79):

■■ "It is well established that whether, under a will, an annuity is payable out of income only or out of principal and income, is always a question of the testator's intention as shown by the will. And in this connection we quote, as very pertinent, from the old case of *Gulliver v. Poyntz,* 3 Wils. (Eng.) 141: 'Cases in the books upon wills may serve to guide us with respect to general rules in the construction of devises in wills, but unless a case cited be in every respect directly in point, and agree in every circumstance with that in question, it will have little or no weight with the court; who always look upon the intention of the testator as the polar star directing them in the construction of wills.'

"However, there are a large number of cases supporting the proposition that where a will contains a gift of legacies and annuities, followed by a general devise of the residue *en masse,* there is thereby created a charge of both upon the *corpus.* In *Reid v. Corrigan,* 143 Ill. 402, a legacy was given to the testator's niece, followed by a devise of the residue of the estate; it was held that the legacy was a charge upon and payable out of the residuary devise. In *Stickel v. Crane,* 189 Ill. 211, it was held that it was a rule of property that, if legacies are given generally and the residue is afterward given in one mass, the legacies are a charge on the residuary estate; that this rests upon the principle that the whole estate is considered as

one mass; that part of the mass is represented by legacies and that 'what is afterward given is minus what has been before given, and therefore given subject to the prior gift.' See also *Williams v. Williams,* 189 Ill. 500.

"...

■ "... It is the rule that no specific language need be used in a will in order to create a charge upon real estate. Any words that reasonably indicate the testator's intention will be held to create such a charge. *Sullivan v. Sullivan,* 242 Ill. App. 501; *In re Estate of Schwartz,* 275 Ill. App. 374; *Additon v. Smith,* 83 Me. 551; *Smith v. Fellows,* 131 Mass. 20, and *Burnet v. Whitehouse,* 283 U. S. 148. And in Thompson on Construction of Wills (1928), page 561, the author says:

" 'There is a substantial distinction between "annuities" and trusts for the payment of income to beneficiaries. Where an annuity is created the annuitant is entitled to the stipulated payments per annum, irrespective of the earnings derived from a particular *corpus* or fund. Where a trust fund is created, however, the beneficiaries are entitled to the entire income earned on the portion mentioned in the will. In the case of annuities, where the income is insufficient, the executors or trustees may encroach upon the principal, even in the absence of specific directions.'

"Page on Wills, sec. 1036, vol. 2 (2d ed.) says:

" 'One of the chief points of difference in effect between a gift of income and an annuity is, that a gift of income fails if the principal of the estate is not sufficient on investment to pay the income bequeathed; while an annuity does not fail because the net income is insufficient to pay it in full, but is payable out of the principal, unless the principal is disposed of by the will in such a way that the gift thereof is on an equality with the annuity or has priority over it in case of abatement, or unless the will shows an intention to

pay the annuity out of the income alone. An annuity is to be paid out of the principal of a residuary gift. Where an annuity is given to a beneficiary, and testator directs his estate to be so invested as to produce such annuity, it is held that in case the income of the estate is not sufficient to pay the annuity in full the principal should be used to pay it. Where a testator directs that a certain fund be so invested as to produce a given annuity, it is held that in case of a deficiency of the income from the fund the principal may be drawn upon.' (Citing cases.)

"Among the many other cases supporting the proposition that an annuity is a fixed amount directed to be paid absolutely and out of the principal if necessary, are *Johnston's Estate,* 264 Pa. 71, *In re Stewart's Estate,* 255 N. Y. S. 389, *In re Anderson's Estate,* 256 N. Y. S. 529, *In re Hardy's Estate,* 86 N. J. Eq. 405. In a note appended to this last case, as reported in L. R. A. 1917E at page 584, it is said: *'The fact that the annuitant was a prime object of the testator's bounty, or that the annuity was evidently intended for the maintenance of the annuitant, is a circumstance strongly tending to show that it was the testator's intention that the annuity should be paid in full and therefore, if necessary, out of the corpus.'* See also 40 Cyc. 1631. Many other cases might be cited.

"The cases cited by plaintiff and the cross appellants involve wills where it was clearly expressed that the annuities should be paid out of the income only and not out of the *corpus* of the estate. Such cases are *Einbecker v. Einbecker,* 162 Ill. 267, *Irwin v. Wollpert,* 128 Ill. 527, and *DeHaven v. Sherman,* 131 Ill. 115." (Italics ours.)

Turning now to an examination of the pertinent provisions of the will under consideration: In section Second we find that the testator granted and bequeathed to his beloved wife, Centa Schloesser, a fixed sum payable annually during her natural life,

in monthly installments. The testator did not provide in this section that the $6,000 was to be paid out of income only, but stated that it should be paid "as specified in the Fourth Paragraph of this my Last Will." Appellants' argument that section Second supports their position is not warranted by the language of that section. They argue that it is significant that nowhere in the will did the testator use the word annuity. As stated in *Moody Bible Institute v. Pettibone, supra* (p. 78) : "It is the rule that no specific language need be used in a will in order to create a charge upon real estate. Any words that reasonably indicate the testator's intention will be held to create such a charge." (Citing cases.) Appellants further argue that the use of the word "income" is also significant. We disagree. The author of the article "Income" in 42 C. J. S. pp. 528, 529, states: "A broad, comprehensive, flexible, inclusive, or generic term, capable of definition. Although it has a well defined meaning, not only in common speech, but also under judicial construction, there appears to be some difficulty about its precise and scientific definition, and its definition may cover a variety of particular significations. Its specific meaning in a particular case is governed by the intent of the parties as deduced from the context, the subject matter of the instrument, and the character of the person, or persons, employing it. The meaning of the term is not to be found in its bare etymological derivation; it is rather to be gathered from the implicit assumptions of its use in common speech; and it must be rationally construed and not stretched to include purely theoretical, as distinguished from practical, conceptions." In the common use of the word an annuity is an income. But in order that his intention might be made absolutely clear, the testator states, in effect, that the nature of the fixed sum he grants and bequeaths to his wife is specified in the Fourth section of his will. The pertinent part of that section (the

paragraph we have designated [A]) reads as follows: "I hereby direct my said Trustees to pay unto my beloved wife, Centa Schloesser, the sum of Six Thousand Dollars ($6,000) annually, in monthly installments of Five Hundred Dollars ($500) each on the first day of each and every month during her natural life." We are satisfied that the testator intended by this plain language to grant and bequeath an unqualified annuity to his wife. Payment of the annuity from any particular fund or source is neither prescribed nor suggested. But appellants contend that the paragraph following paragraph [A], in which the testator uses the words "the balance of the income of my estate after deducting the payments to my beloved wife," etc., supports their contention. This last paragraph is separate from paragraph [A] and we are satisfied that the testator did not intend that it should modify or qualify paragraph [A]. If it be conceded that the intent of this last paragraph is somewhat ambiguous, that fact would not aid appellants' contention, because, "A gift in clear terms cannot be taken away or diminished by subsequent words that are not as clear and decisive; likewise, a clear gift by an earlier provision will not be modified or qualified by a later obscure or ambiguous provision." (69 C. J. pp. 114, 115.) See, also, *Melies v. Beatty,* 313 Ill. 418, where the court states (p. 421):

"The rule of construction is, that when an estate is given by one clause of a will it cannot be cut down or taken away by a subsequent clause except by clear and unambiguous terms,—as clear as the language of the clause giving the estate. (*Roberts v. Roberts,* 140 Ill. 345.)" (See, also, *Holmes v. Miner,* 247 Ill. 586, 589.)

In support of appellants' contention that the payments to the wife could only be made from the trust income they cite *Einbecker v. Einbecker,* 162 Ill. 267. As Mr. Justice McSurely stated in *Moody Bible In-*

*stitute v. Pettibone, supra* (p. 79), in the *Einbecker* case it was clearly expressed in the will that the annuity should be paid out of the income only and not out of the corpus of the estate. A like situation was present in *Chicago Title & Trust Co. v. Morey,* 281 Ill. App. 219, cited by appellants. As to *Taylor v. Gardiner,* 296 Mass. 411, also cited by appellants, it is sufficient to say that there the will contained a provision (p. 413) that "All payments, both of principal and of income as aforesaid shall be left solely to the discretion of my said trustee and his decision as to payments from principal or income shall be final and binding." Furthermore, the opinion in that case states (p. 414): "This case is to be distinguished from cases where the will discloses an intent to charge a true annuity upon the fund as a whole, *Richardson v. Hall,* 124 Mass. 228, 236, *Parkhurst v. Ginn,* 228 Mass. 159, 172, and even from cases where there is no express indication of the intent one way or the other, *Hammond v. Hammond,* 169 Mass. 82, 84."

The productive part of the instant estate consisted of the Broadway building and that property was practically the only source of income. To sustain appellants' contention it would be necessary to hold that the testator intended that if for any reason the Broadway building became nonproductive his widow should be without means of support. Certain provisions of the will clearly show that the testator had no such intention and that he regarded his "beloved wife" as the primary object of his bounty. To repeat what Mr. Justice McSurely said in *Moody Bible Institute v. Pettibone, supra* (p. 79): " 'The fact that the annuitant was a prime object of the testator's bounty, or that the annuity was evidently intended for the maintenance of the annuitant, is a circumstance strongly tending to show that it was the testator's intention that the annuity should be paid in full and therefore, if necessary, out of the *corpus.*' "

If we have correctly interpreted the pertinent pro-. visions of the instant will, it follows that the chancellor was justified in dismissing the cross-complaint for an accounting.

For the reasons stated in this opinion the decretal judgment of the Circuit court of Cook county is affirmed *in toto.*

*Decretal judgment affirmed in toto.*

SULLIVAN, P. J., and FRIEND, J., concur.