Russell Sauvage, Plaintiff Appellant, Virginia Galla-
way, Plaintiff Appellee, v. M. C. Gallaway et al.,
Trustees, Defendants Appellees.

Term No. 48F4.

36

Opinion filed June 18, 1948. Released for publication July 19, 1948.

VERLIE, EASTMAN & SCHLAFLY and EMERSON BAETZ, all of Alton, for appellant.

C. C. ELLISON, of Alton, for cross-appellants.

MR. JUSTICE SCHEINEMAN delivered the opinion of the court.

This appeal involves a final decree construing the will of William M. Sauvage, deceased, and adjudicating upon a trust created therein.

The testator died August 15, 1938, and by his will placed the bulk of his estate in a trust for ten years, then to be divided equally between his two children, Russell Sauvage and Virginia Gallaway, with gifts over in case either or both died before distribution.

The designated trustees refused to qualify and the court below, upon proper proceedings in chancery, appointed M. C. Gallaway as successor trustee. M. C. Gallaway is the husband of Virginia Gallaway, one of the beneficiaries. There ensued between him and Russell Sauvage friction, bickerings, and almost constant litigation, this being the fourth appeal to this court from orders in the trust administration.

The chancellor has now removed Gallaway as trustee and entered a lengthy decree, evidently designed to terminate a bad situation and to resolve many questions and disputes. Most of the decree is accepted by the parties, but Russell Sauvage has appealed and assigned errors upon a few points and the trustee and his wife have assigned cross-errors. The relevant facts will be presented with the discussion and disposition of the several questions before this court.

The following clause appears in the will among the instructions to the trustees and both parties have assigned as error the rulings of the trial court in construing it.

"It is my instruction that my son Russell Sauvage be paid the sum of at least $40.00 a week, payable weekly, during the term of my Executors and during the term of my Trustees and I direct my Executors during their term and my Trustees during their term to make such payments, provided, however, my son shall continue of his own free will and accord as an employee of the W. M. Sauvage Advertising System or of any successor thereto which may be owned and

controlled by my Trustees.'' (The Advertising System referred to is a bill-board and outdoor display advertising business, and is the principal asset of the trust.)

The only other provision in the will referring to the $40 per week is a spendthrift clause. It purports to exempt this payment from garnishment, etc.

The appellant, Russell Sauvage, asserts the quoted clause should be construed substantially as follows: That it provides a plan for the maintenance and support of Russell, the amount thereof to be not less than $40 per week but to be increased according to prevailing price levels and the economic necessities of Russell; and, that in addition to the variable amount of support and maintenance thus allowed him, the trustee should pay him reasonable compensation for any services performed by him as an employee of the advertising business.

We are unable to sustain this contention. Moreover, we perceive nothing ambiguous in the quoted clause. Therefore, there is no cause to consider evidence of conditions during testator's lifetime. *Bingel v. Volz,* 142 Ill. 214; *Dahmer v. Wensler,* 350 Ill. 23, 30.

If the testator had intended to provide for Russell's support and maintenance, regardless of employment, he could easily have said so, but the will contains no such directions. The offered evidence indicated Russell was not industrious and his father was aware of the fact. Such evidence, if considered, only serves to show that the testator fixed a minimum salary of $40 per week, because he realized Russell might be worth less in the judgment of the designated trustees.

It should be noted that the payments are to be made only during the time Russell continues as an employee, and would cease upon the termination of his employment, either by reason of his own choice, or because of the business passing out of control of the trustees.

If the father had intended this provision to be for his son's support, irrespective of wages for his services, surely he would not have required it to end at the very time the beneficiary would have the greatest need for it, *i.e.*, when he lost his job.

The clause definitely and unequivocally ties the payment of a weekly stipend to a period of employment, and this cannot be ignored. Appellant's argument makes much of the words ''at least.'' The purpose of these words is obvious: if testator had prescribed exactly $40 per week, he would be preventing his trustees from paying his own son the reasonable value of his services whenever they were worth more. The natural meaning and effect of the wording used permits the son to be paid whatever he is worth, but not less than $40 per week.

The evidence indicates that during many weeks Russell's services were worth substantially less than $40; but there was a period when they were worth $50 (as found by the trial court). Neither sum was adequate for his support, under the evidence. The chancellor's rulings are inconsistent in this: during the time the services were worth less than $40 Russell was allowed precisely that and no more; when his services were worth $50 he was allowed $90.

This result was reached because, when the services were worth less than $40, much of the $40 was gratuitous; at that time the court was induced to believe the clause had to have a name; the chancellor labeled it a ''legacy,'' and later gave this name its literal effect. It is not likely to be helpful, in construing a writing, to begin by giving it a name. The quoted clause is designed to meet variable conditions, and as conditions changed, the effect should be determined by reading the words, not by referring to some label previously adopted. This principle of construction is so fully justified in legal logic that courts sometimes ignore the parties' or the author's own name for

a writing, in order to give its wording a natural effect according to its substance rather than its technical form. For tax purposes, the effect of the clause may be different under different conditions, but its interpretation should not be limited by any temporary set of conditions.

That part of the decree (assigned as error by appellant) which disallows payments to Russell in excess of $40 per week when his services were worth less is affirmed. That part of the decree (assigned as error by cross appellants) which by construction allows $90 per week when the services were worth only $50 is reversed with directions to construe the clause in question as allowing reasonable compensation to Russell Sauvage for services rendered, not less than $40 per week. For the period covered by the decree during which the services were ordered valued at $50 per week, the finding and order is affirmed to that extent.

The next question involves the following agreement purporting to enlarge the powers of the trustee. It was executed in June 1940 but was dated back to January 5, 1940.

"It is mutually agreed between W. R. Sauvage and Virginia S. Gallaway that a sum equal to that paid to W. R. Sauvage as salary as an employee of the W. M. Sauvage Advertising System be paid to Virginia S. Gallaway.

It is also mutually agreed that in case of a division of the profits that the two above named shall share and share alike.

Heirs of W. M. Sauvage Estate<br>
W. R. Sauvage<br>
Virginia S. Gallaway''

Pursuant to the above instrument, in the ensuing four years, the trustee advanced to his wife, Virginia, $7,465 at the rate of $40 per week plus $2,798.45 additional, a total of $10,263.45. He also advanced to Russell $2,999.06 besides his salary.

In order to consider the validity of this instrument, reference must be made to other provisions of the will. No question of construction has been raised concerning these provisions, therefore they will not be set forth in full. It suffices to say that the will required the trustees to keep the principal of the trust invested, to collect the income, and to make certain specific disbursements not here involved. There was no provision for distribution of income remaining from time to time on hand, and no other provision for partial distribution during the ten-year term of the trust. At the expiration of the term, the whole was to be divided between the two-named children, *with gifts over if either was not then living.* This latter provision is important for its effect upon the attempted enlargement of the trustee's powers, for the reason that these two beneficiaries would take nothing unless they survived the ten-year period.

 ██ The court below declared the agreement above set forth to be null and void, and surcharged the report of the trustee with all advancements above mentioned made pursuant to it. The chancellor gave several reasons for his decision, but we think it is sufficient to say that contingent beneficiaries cannot by their own agreement or by agreement with the trustee cause an acceleration of distribution nor can they revise the will of the deceased to suit their own conveniences. *Wood v. Gridley,* 217 Ill. App. 579; *Scheuing v. May,* 213 Ill. App. 143.

For the reason given, this part of the decree (assigned as error by cross appellants) is affirmed. The chancellor also provided for recovery by the trustee from the two beneficiaries, so far as possible in view of the contingent nature of their interests. This was doing complete equity and none of these provisions will be disturbed.

Cross appellants make the additional claim, that even though the above agreement is void, Mrs. Gallaway

should be allowed the $7,465. already advanced to her, plus an additional $1,855 for the period from August 10, 1943 to June 26, 1944, all being at the rate of $40 per week, on the ground that she is entitled to it as compensation for services performed. Error is assigned on the rulings of the court which disallowed these claims entirely.

The decree in this respect is fully justified, and therefore will not be disturbed. Other than direct testimony, which we will not set forth, there are three circumstances bearing upon this question. which are now mentioned, because they are also pertinent upon another point yet to be disposed of, in that they reflect upon the attitude and disposition of the trustee toward his trust, and indicate a certain lack of consistency and reliability in his representations.

First. It is apparent in the record that when Gallaway was appointed trustee in January 1940, he was dissatisfied with the will under which he was acting. He wanted his wife to have income at once; he begrudged the fact that Russell Sauvage was getting $40 a week without much effort while his wife had no such benefit. He began, thereupon, a continuous argument with Russell in an effort to secure consent to a plan he had. After six months of arguments and importunities the trustee finally had his way and the void agreement above mentioned was executed, also another agreement enlarging his "trustee's fees" from three per cent of disbursements, as ordered by the court, to a flat $25 per week. It may be observed that the instrument refers to payments to Russell "as salary," but the equal payments to Virginia are not so described.

Second. In January 1943, three years after the purported effective date of the void agreement, the trustee, Gallaway, was negotiating with the Commissioner of Internal Revenue, and then made the following statement *Under oath;* "the Trustee has continued to

pay . . . $40 a week to Mrs. Gallaway, who was not in any sense an employee and who did not perform any services for such payment so that such payments merely amount to a partial distribution of the assets of said trust estate, one-half of which is payable to her at the expiration of ten years and one-half to the son provided they live that long.''

In addition to the foregoing, Gallaway filed a pleading in the circuit court, during further litigation in this estate later in 1943, in whch he made the following statement over his own signature: ''this trustee knows that said amount so paid to her amounts to a partial distribution of the trust estate.'' The reference was to more than $8,000 then already advanced to Virginia.

In spite of these positive statements made at the time of the disbursements, Gallaway now makes oath that his wife. *earned* the $40 weekly.

Third. Besides the inconsistencies and misrepresentations disclosed above, Gallaway had still another theory. Several times in his testimony he claimed the payments to Virginia were actually compensation *for his own* services. This may be summed up in his own words: ''The truth of the matter is that Virginia's $40 per week plus my $25 per week was the consideration that I took into account when I agreed to work for the Sauvage Advertising System.''

The foregoing indicates that, in order to obtain a monetary gain, this trustee was willing to make any sort of statement the occasion might require, and if one proved ineffective, to make a new and different assertion. It is also shown that he was prone to confuse his personal and family affairs with his trust affairs.

All of this bears upon the next question pertaining to his fees as trustee. He has paid himself $5,150 for which he was allowed credit in his report and the court allowed him an additional $1,614.29 because, during a certain period when the advertising business had no other manager, Gallaway performed those

44

duties. Appellant assigns these portions of the decree as error.

In addition to facts already appearing in this opinion, the following recital of the trustee's activities is pertinent to the question of his right to compensation.

The record discloses that the advertising business was quite profitable. In 1943, the trustee proposed to sell the business outright to his wife, at private sale, for the sum of $30,000. Obviously, this would not only give the Gallaways the entire net income, but would also, by getting the business out of the trust, put an end to Russell's right to receive $40 per week, thus materially increasing the annual net income to the Gallaways. To prepare for putting over this deal, Gallaway first offered the business to Russell at the proposed price. This was a mere gesture, as is evident from Gallaway's own testimony, in which he asserts that Russell could never get himself in position to buy. But after several months of effort, Russell did interest some financial backing. When he notified the trustee of this one evening, Gallaway replied, "Your time expired at three P.M. today." Thereupon, Russell petitioned the circuit court to intervene, which it did, and the proposed sale of the business to the trustee's wife was thereby precluded.

This was only a temporary setback. By 1945, Gallaway and his wife had set up a competing business against that of the trust, which previously had no competitor in its area. The trustee thereupon used his best efforts to divert business from his trust to his private company. For a more complete statement of facts, see *Sauvage v. Gallaway*, 329 Ill. App. 38, wherein this court condemned his actions as a breach of trust, and ordered an injunction issued to restrain him from continuing the competition.

The remarks of this court in that case fell upon deaf ears. Gallaway did not sever his connection with this

trust nor with the competing business, but employed the device of conveying the latter to someone ''in trust.'' The evidence is not clear but we infer that the competition is now being conducted through the trustee's wife. ·

It would seem that Gallaway's compliance with the court's mandate has been only perfunctory, at best. Even so, he had yet another scheme to unfold. In 1946 he still asserted the right to sell assets of the trust in his discretion, pursuant to authority granted by. the will, and he protested any attempt by the chancellor to limit that discretion. His new proposal was to sell off, piecemeal, various tracts of land owned by the business as sites for billboards. Gallaway was enjoined from proceeding along this line, and the petition for leave to sell was denied. The trustee appealed and, in affirming the order, this court said of him, ''In fact, he was seeking to cripple and destroy the largest asset of the estate which was its principal income producing asset. He was not acting in good faith and within the limits of sound discretion, but rather arbitrarily and unreasonably.''. *Sauvage v. Gallaway*, 331 Ill. App. 309, 311.

In considering the propriety of allowing compensation to M. C. Gallaway for services as trustee, it may be recalled that, as the law of trusts first developed in England, the position of trustee was regarded as one of such high honor and altruism, he was never permitted to use the position for personal gain, not even to the extent of reasonable compensation for his own time and services. This rule has been so far modified in the United States that a trustee is now allowed fees for his services; but this is contingent upon his performance of his duties with diligence, honesty and good faith.

If a trustee has neglected his duties, exercised bad faith in the conduct of his trust, or committed a

breach of obligation in any way, he forfeits his right to compensation. 27 Am. & Eng. Ency. of Law 187; *Lehman v. Rothbarth*, 159 Ill. 270, 282; *Countiss v. Whiting*, 306 Ill. App. 548, 556. "If the trustee repudiates the trust or misappropriates the trust property, or if he intentionally or negligently mismanages the whole trust he will ordinarily be allowed no compensation." Am. Law. Inst. Restatement, Trusts § 243d.

In this case the trustee has performed substantial services for the trust; there is no indication of negligence, and he has not concealed assets nor his actions concerning them. On the other hand, he has openly evinced a disloyalty to the wishes and directions of the testator; he has sought to milk the trust for the private gain of himself and family; he has endeavored to obtain personal control of the principal asset for himself or his wife; failing this, he has tried to hamper and cripple the business by originating competition with it and by dismantling it of its sources of income. The trust has been preserved, practically intact, through the ten-year term in spite of these acts of the trustee, but only by prolonged and expensive litigation. The record in this case discloses costs and attorneys' fees taxed to the trust in excess of $15,000. This is in addition to other costs taxed against the trust in previous proceedings and appeals, the total of which is not stated. Much of this expense has directly resulted from the trustee's persistent disregard of his legal and moral obligations.

Under these circumstances, the rules above cited are clearly applicable, and those portions of the decree allowing compensation to M. C. Gallaway as trustee are reversed with directions to surcharge his report with the $5,150 retained by him, and to disallow the claim for $1,614.29.

Cross appellants have also assigned as error that one of the trustees appointed to replace Gallaway

has heretofore served in this suit as guardian *ad litem,* and trustee for persons not in being. His duty in that capacity was solely concerned with protecting the fund from loss, dissipation and unlawful charges. This cannot disqualify him from now assuming similar duties in behalf of all possible beneficiaries.

Appellant has assigned as error the decree of the court below taxing costs against the trust fund upon the ground that this in effect divides them between Russell Sauvage and his sister. The chancellor has broad discretion in the assessment and taxing of costs and a court of review will not disturb his orders except for an obvious abuse of discretion. *Drexel State Bank of Chicago v. O'Donnell,* 344 Ill. 173. It was necessary in this case to adjudicate exhorbitant claims of the trustee and also of both of the current beneficiaries, to construe the will, and to provide for protection of the trust fund. We think the order of the chancellor with respect to costs was justified and it will not be disturbed.

The decree of the court below is affirmed in all respects except the allowance of more than $50 per week to appellant when his services were worth only that amount, and in allowing fees to the trustee. Costs in this court will likewise be assessed against the trust fund to be paid by the trustee.

*Affirmed in part and reversed in part.*

CULBERTSON, P. J., and BARDENS, J., concur.