164 Ill. App.3d 596 (1987)
518 N.E.2d 178
THOMAS V. JONES, JR., et al., Plaintiffs-Appellants,
v.
HERITAGE PULLMAN BANK AND TRUST COMPANY, f/k/a Pullman Bank and Trust Company, Ex'r of the Will of Margaret Daniel, Deceased, et al, Defendants-Appellees.
Nos. 86-2758, 87-0838 cons.
Illinois Appellate Court  First District (4th Division).
Opinion filed October 29, 1987.
Rehearing denied January 21, 1988.
*597 *598 Richard C. Moenning, of Chicago, for appellants.
Wildman, Harrold, Allen & Dixon, of Chicago (Jerald P. Esrick, Robert E. Hamilton, and James T. Nyeste, of counsel), for appellee Heritage Pullman Bank and Trust Company.
Patrick T. Murphy, Public Guardian, and Marsha Hayes, guardian ad litem, both of Chicago, for minor and unborn children.
Affirmed in part and reversed in part.
JUSTICE JIGANTI delivered the opinion of the court:
This appeal involves the construction of a testamentary trust created by the will of the decedent, Margaret Daniel. The will directed the trustee, Heritage Pullman Bank and Trust Company (Heritage), to sell the decedent's nine-unit apartment building, invest the proceeds from the sale and pay annuities to certain of the plaintiffs, who are beneficiaries of the trust. Instead of selling the apartment building, Heritage retained and operated it for 19 years, reinvesting the income from the property into the trust. The plaintiffs brought this action against Heritage alleging that the failure to sell the building constituted a breach of Heritage's duty to administer the trust according to its terms. The plaintiffs also asked the trial court to construe the trust in a manner which would permit one of the beneficiaries, Thomas V. Jones, Jr., to receive income from the trust in addition to his stated annuity. The trial court found that there was no breach of fiduciary duty, refused the request by Thomas V. Jones, Jr., to receive additional income from the trust and awarded Heritage costs and attorney fees to be charged against the trust. The plaintiffs have appealed, contending that the judgment was against the manifest weight of the evidence. On its own motion, this court appointed Patrick Murphy, the Cook County public guardian, to represent the minor and unborn children of Thomas V. Jones, Jr., in this appeal.
The specific issues raised in this appeal are: (1) whether the trial court erred in finding that the decedent's direction to Heritage to sell the building "as soon as conveniently may be" gave Heritage discretion *599 to retain the building for 19 years; (2) whether Heritage properly accumulated and reinvested the income from the trust property rather than paying the income to Thomas V. Jones, Jr.; (3) whether the trial court erred in finding that Heritage's failure to sell the building sooner and invest the proceeds resulted in damage to the value of the trust; (4) whether the plaintiffs are entitled to have Heritage removed as trustee and surcharged for all compensation it received for administering the trust; and (5) whether the trial court erred in awarding Heritage attorney fees from the trust estate and in awarding the plaintiffs an inadequate amount for attorney fees and litigation expenses.
For several years prior to her death, Margaret Daniel owned and lived in an apartment building located at 436-440 East 72nd Street in Chicago. When her health began to fail, her niece, Betty Jean Jones, moved into Daniel's apartment to care for her. Margaret Daniel died testate on October 26, 1967. Heritage received title to the apartment building as executor of her estate and was named trustee of a testamentary trust created by the will. The provisions of the will which are pertinent to this appeal are as follows:
"I direct my Trustee to convert all of the assets of my estate into cash as soon after my death as conveniently may be, by selling all of my assets at public or private sale; said cash is to be deposited in savings or investment accounts in banks or savings and loan associations located in the City of Chicago.
Beginning one month from the date of my death, I direct my Trustee to pay over from the principal to the following persons, during their lifetime or until the Trust Res is depleted, the sums set forth:
TO  my niece, BETTY JEAN JONES, of Chicago, Illinois, $200.00 per month.
TO  my nephew, JOHN A. BARNES, JR., of Chicago, Illinois, $100.00 per month.
TO  my grand-nephew, THOMAS V. JONES [JR.], of Chicago, Illinois, $100.00 per month.
Upon the deaths of both BETTY JEAN JONES and JOHN A. BARNES, JR.,[1] I direct that the Trust be terminated and the balance of the Trust funds, if any remaining, be turned over in lump sum to THOMAS V. JONES [JR.], or the heirs of his body.
In the event upon the termination of the Trust, the said *600 THOMAS V. JONES [JR.] be not living, or in the event he leaves no heirs of his body, then I direct that the balance of the Trust funds be turned over to the JANE DENT HOME FOR THE AGED, at 4430 South Vincennes Avenue, Chicago, Illinois."
The major asset of the trust was Daniel's nine-unit apartment building. Heritage had the building appraised and received appraisals of $47,000 and $49,000 as of the date of Daniel's death in 1967. The building was also appraised at $71,000 as of March 11, 1968, and at $54,000 as of August 1, 1968. On April 2, 1968, Heritage listed the property for sale at $75,000 and, on August 2, 1968, rejected an offer in the amount of $53,000. In rejecting the offer, Heritage expressed its belief that the property did not have to be liquidated immediately and subsequently lowered the asking price to $60,000. On February 2, 1970, Heritage receipted for the building as trustee and was discharged as executor. No further listings of the property were made and Heritage continued to operate the building as an income-producing asset of the trust. Heritage received annual compensation for managing the trust in the amount of $800.
During this time Betty Jean Jones, who was unemployed, occupied Daniel's former apartment without paying rent. Living with her much of that time was her disabled son, plaintiff Thomas V. Jones, Jr., and his children. Heritage contended at trial that it had an "understanding" with the plaintiffs that they would be allowed to live rent-free in the building as long as it remained unsold and that this arrangement was convenient for the plaintiffs. Betty Jean Jones testified that she performed uncompensated services as a resident manager, taking calls from tenants at all hours and performing minor janitorial functions. At one time in 1976, Thomas V. Jones, Jr., while living in Nebraska, requested that the building be sold and that $10,000 be loaned "against the trust agreement" to be used as a down payment for a home for Betty Jean Jones in the city of Omaha. When Heritage responded that it would sell the building but could not make the loan, the request to sell the building was withdrawn. The plaintiffs made no other request that Heritage sell the building until this lawsuit was filed in 1985. The building was sold prior to trial for $100,000.
At trial, the plaintiffs argued that Heritage breached its fiduciary duty to administer the trust according to its terms by retaining the building for 19 years and by accumulating the income produced by the trust property rather than distributing it to Thomas V. Jones, Jr. They also maintained that Thomas V. Jones, Jr., is a vested remainderman *601 and therefore presently entitled to all trust income. The plaintiffs presented evidence in support of their contention that had Heritage sold the building in 1970 for approximately $47,000 and invested the proceeds as directed, the trust would be currently valued at $266,962 rather than its actual value of $130,844.84. Heritage challenged this evidence in many respects, noting that the plaintiffs' calculations did not take into account annual State or Federal income taxes that would have been incurred. Heritage further contended that the plaintiffs' hypothetical portfolio overstated the funds which would have been available for investment in 1970 and that it reinvested interest that was not yet received. Heritage also produced testimony that it was not required by the terms of the will to invest in the type of portfolio that the plaintiffs hypothesized and could have simply invested in lower interest passbook accounts of banks and savings and loan institutions. According to Heritage's calculations, a sale of the building and investment of the proceeds in 1970 would have resulted in the trust being currently valued at $121,787.60.
At the conclusion of the trial, the court found that Heritage did not breach its fiduciary duty to administer the trust according to its terms and that even if a breach had occurred, no damage to the value of the trust resulted. The court subsequently considered petitions for costs and attorney fees in the amount of $27,000 for the plaintiffs' attorney, $43,000 for the attorneys for Heritage, and $8,000 for the court-appointed guardian ad litem. Noting the relatively modest value of the trust and the fact that it was not benefited by the litigation, the court awarded the plaintiffs $1,250 in attorney fees and a $500 expert witness fee. Heritage was awarded $20,000 in attorney fees and $2,000 for expenses, and the guardian ad litem received the full $8,000 he requested.
 1 The plaintiffs' first contention on appeal is that the trial court's ruling that Heritage properly administered the trust is against the manifest weight of the evidence. Specifically, they argue that the decedent's direction to sell all of her assets "as soon as conveniently may be" cannot be properly interpreted as allowing Heritage to retain and operate the building for 19 years. It is the position of Heritage that the above-quoted language gave it discretion to consider the conditions of the real estate market as well as the convenience of the plaintiffs, who had consented to the arrangement and were living in the building rent-free, in determining when to sell the building.
The purpose of a court in construing the provisions of a will is to give effect to the intention of the testator. (Fatheree v. Gregg (1960), 20 Ill.2d 620, 622, 170 N.E.2d 600.) "[W]hen the words used in their *602 ordinary sense are plain and their meaning clear, construction demands the use of the plain intention." (In re Estate of Steward (1985), 134 Ill. App.3d 412, 414-15, 480 N.E.2d 201, 203.) The meaning to be given to the plain words of a written instrument is a question of law to be determined by the trial court. Ahlvers v. Terminal R.R. Association (1975), 31 Ill. App.3d 166, 171-72, 334 N.E.2d 329.
 2 In the case at bar, Margaret Daniel directed Heritage to convert her assets into cash "as soon as conveniently may be," to invest the proceeds and to administer them in trust for the plaintiffs. Heritage maintains that the phrase "as soon as conveniently may be" gave it discretion to consider the convenience of the plaintiffs living in the apartment building and the condition of the real estate market in determining when to sell the building. We believe this interpretation is contrary to the plain meaning of the words used. The provisions of the will creating the testamentary trust, read as a whole, show that Margaret Daniel intended Heritage to sell all of her assets, including the apartment building, soon after her death, to invest the proceeds in savings or investment accounts in banks or savings and loan associations and to pay annuities as specified. In our view, the phrase "as soon as conveniently may be" relates to the process of conversion, i.e., the taking and consideration of offers and the closing of the transaction. We do not believe that this language can be properly interpreted as authorizing Heritage to retain and operate the building for 19 years.
 3 Nor are we persuaded by Heritage's argument that its breach of duty must be excused because it was consented to by Betty Jean Jones and Thomas V. Jones, Jr., who found the rent-free living arrangement convenient. The will provides that upon the termination of the trust, the remaining trust funds would go to "Thomas V. Jones [Jr.] or the heirs of his body." Thus, the heirs of Thomas V. Jones, Jr., are alternative takers of the balance of the trust funds and have a protectable interest in the remainder. (Fatheree v. Gregg (1960), 20 Ill.2d 620, 170 N.E.2d 600; Ohio Oil Co. v. Daughetee (1909), 240 Ill. 361, 88 N.E. 818.) As trustee, Heritage had a duty to deal impartially with all beneficiaries and therefore to protect the interest of the heirs of Thomas V. Jones, Jr., as well as the interest of the life beneficiaries. (Ohio Oil Co. v. Daughetee (1909), 240 Ill. 361, 88 N.E. 818; Restatement (Second) of Trusts sec. 232, at 555 (1959).) Under these circumstances, we do not believe that Heritage may rely upon the consent of Betty Jean Jones and Thomas V. Jones, Jr., to excuse the breach of its duty to administer the trust according to its terms. See Restatement (Second) of Trusts sec. 216, comment g, at 502 (1959).
*603  4, 5 The plaintiffs next contend that Heritage acted improperly in accumulating and reinvesting the income earned by the trust property. They argue that, as a life beneficiary and vested remainderman, Thomas V. Jones, Jr., was entitled to presently receive all trust income in addition to the stated annuity paid from the trust principal. In our view, the provisions of the will are clear with respect to the gift given to Thomas V. Jones, Jr. He was to receive $100 per month until the termination of the trust at which time, if he was living, he would receive the balance of the trust funds. If not living, the remainder would vest at that time in the heirs of his body. It appears clear that by specifying the amount to be received by each life beneficiary on a monthly basis, Margaret Daniel intended to create an annuity for each beneficiary. An annuity is a fixed sum, granted or bequeathed, payable periodically. (Routt v. Newman (1911), 253 Ill. 185, 188, 97 N.E. 208.) When an annuity is created, the annuitant is entitled to receive only the sum stated, irrespective of the earnings derived from the particular fund. (Schloesser v. Schloesser (1946), 329 Ill. App. 604, 614, 70 N.E.2d 346.) We believe that by creating an annuity, the decedent intended that Thomas V. Jones, Jr., receive only the amount stated during his lifetime and that his enjoyment of the trust income, along with the balance of the principal, be postponed until the termination of the trust.
 6 The plaintiffs' first argument on the issue of damages is that the trial court erred in finding that Heritage's failure to sell the apartment building soon after Margaret Daniel's death and to invest the proceeds at that time did not result in damage to the value of the trust. As previously stated, the plaintiffs presented demonstrative evidence in the form of a hypothetical portfolio to support their argument that the value of the trust, absent the breach, would have been $266,962. Heritage challenged this evidence by pointing out several discrepancies in the hypothetical portfolio. After assessing the evidence, the trial court determined that Heritage's action in retaining and operating the building rather than selling it and investing the proceeds resulted in no damage to the trust. Although the plaintiffs argue generally that this finding was incorrect, they fail to provide this court with any specific basis upon which to find error. We are therefore unable to conclude that the trial court's determination that there were no damages was against the manifest weight of the evidence. Ruggio v. Ditkowsky (1986), 147 Ill. App.3d 638, 642, 498 N.E.2d 747.
 7, 8 The plaintiffs' next contention regarding damages is that because Heritage breached its duty to administer the trust according *604 to its terms, it was not entitled to receive any compensation for its services and therefore should be required to return to the trust all compensation it received in connection with its administration of the trust. The plaintiffs also request that Heritage be removed as trustee.
A trustee which neglects its duties or commits a breach of its obligations may forfeit the right to compensation for services rendered to the trust and may be surcharged for the amount of compensation which it credited to itself. (Sauvage v. Gallaway (1948), 335 Ill. App. 35, 45-46, 80 N.E.2d 553.) The Restatement (Second) of Trusts contains the following statement concerning the effect of a breach of the trust upon the trustee's right to compensation:
"It is within the discretion of the court whether the trustee who has committed a breach of trust shall receive full compensation or whether his compensation shall be reduced or denied. In the exercise of the court's discretion the following factors are considered: (1) whether the trustee acted in good faith or not; (2) whether the breach of trust was intentional or negligent or without fault; (3) whether the breach of trust related to the management of the whole trust or related only to a part of the trust property; (4) whether or not the breach of trust occasioned any loss * * *; [and] (5) whether the trustee's services were of value to the trust." Restatement (Second) of Trusts sec. 3, comment c, at 612-13 (1959).
 9 Applying these factors to the case at bar, we find no basis upon which to surcharge Heritage for compensation received and expenses incurred in administering the trust. The breach committed by Heritage in failing to sell the building soon after Margaret Daniel's death was technical in nature and was not done in bad faith. The trial court found that the value of the trust sustained no damage as a result of the breach, and the evidence revealed that Heritage operated the building at a profit, paid the annuities as directed and otherwise properly managed the trust property. (See Conant v. Lansden (1950), 341 Ill. App. 488, 94 N.E.2d 594, aff'd in part and rev'd in part, 409 Ill. 149, 98 N.E.2d 773.) Given these facts, removal of Heritage as trustee at this point would serve only to increase expenses to the trust and unduly burden the trust estate.
 10 The guardian ad litem appointed by this court to represent the minor and unborn children of Thomas V. Jones, Jr., contends that Heritage committed a breach of duty by allowing Betty Jean Jones and Thomas V. Jones, Jr., to live in the building rent-free and argues that Heritage is liable to the trust for the amount of lost rental income. The evidence at trial showed, however, that Betty Jean Jones *605 benefited the trust by performing uncompensated services as a resident manager in exchange for the rent-free living arrangement. To the extent that there is a difference in value between the rent and the services performed, we do not believe that the difference warrants further litigation in a cause where far too much of the trust funds has already been depleted.
 11 The final issue raised by the plaintiffs concerns the trial court's award of attorney fees. As previously noted, the trial court awarded the plaintiffs $1,250 of the $27,000 in fees claimed; Heritage received $22,000 of the requested $43,000 representing fees and expenses.
Although the amount of attorney fees allowable in an action for construction of a will rests within the discretion of the trial court, the fees awarded must be reasonable, taking into account the services rendered and the amount involved. Logan v. Harris Trust & Savings Bank (1955), 8 Ill. App.2d 61, 74, 130 N.E.2d 211.
 12 The plaintiffs correctly assert that it was necessary for them to institute this action based on Heritage's failure to sell the apartment building as directed by Margaret Daniel's will. However, the record shows that Heritage quickly acquiesced in the request to sell the building and that the building was in fact sold prior to trial. The plaintiffs failed to prove any damages to the trust as a result of Heritage's refusal to sell the building sooner, and much of the trial involved an attempt by Thomas V. Jones, Jr., to receive more than the $100 per month annuity to which he was entitled under the terms of the will. We therefore agree with the trial court's determination that the trust was not benefited by the litigation and affirm the $1,250 award of attorney fees.
 13 Based upon our conclusion that Heritage breached its fiduciary duty to administer the trust according to its terms, we do not believe that it was entitled to an award of attorney fees and litigation expenses from the trust estate for defending the lawsuit. (See Ellis v. King (1949), 336 Ill. App. 298, 83 N.E.2d 367.) We therefore reverse the award of $22,000 to Heritage.
Accordingly, the judgment of the circuit court is affirmed in part and reversed in part.
Affirmed in part and reversed in part.
LINN and JOHNSON, JJ., concur.
NOTES
[1] John A. Barnes, Jr., died prior to this litigation.