## CIRCUIT COURT OF THE CITY OF NORFOLK

Christine Ann Smack
and Eric James Smack

v.

Michael B. Smack,
individually,
and Michael B. Smack,
trustee

April 23, 2010

Case No. (Civil) CL07-6778

By Judge Everett A. Martin, Jr.

The plaintiffs, two of the beneficiaries of Stephen C. Smack 1996 Revocable Declaration of Trust, filed a complaint seeking an accounting, damages, attorney's fees, and other relief from the trustee of the trust, their step-brother. The plaintiffs withdrew their claim for punitive damages at trial. The cause was tried on November 9, 2009. I received the last memorandum on January 4 and the transcript on February 17, 2010.

The evidence at trial consisted of numerous exhibits and the testimony of two witnesses. In my view of the case, the facts are mostly undisputed. The legal consequences of the facts are, however, in dispute. The parties contest the trustee's entitlement to fees and whether the trustee owes the trust interest on amounts borrowed for his personal use.

### Trustee's Entitlement to Fees

The trustee has kept meticulous records of the income and disbursements of the trust, and the beneficiaries do not raise a credible challenge to their accuracy. (This could be in part owing to the difficulty and expense of trying to organize thirteen years of records.) However, the trustee failed in certain particulars in his administration of the trust. He failed to file income tax returns for several years. He borrowed money

from the trust and did not pay interest on the loans. He did not provide a written accounting to the beneficiaries until February 2007, although he had provided some information to them in earlier years. See 760 ILCS 5/11 (a). He did not set up three separate trusts at his father's death as the trust declaration provided, although the principal asset of the trust was real estate that could not be divided in kind. It took the trustee eight years after the purchase to obtain a deed from the Prestons for their interest in the real estate.

The trustee made one imprudent investment. He bought almost $105,000 in notes his employer issued. Most of the notes were paid with interest; however, his employer defaulted on $45,000, which proved uncollectible. To his credit, the trustee charged this loss against his share of the trust.

The trustee seeks three separate fees: a trustee's fee, a property management fee, and a real estate financial management fee. The declaration of trust provides for "reasonable compensation to the trustee." Article Sixth (H). However, in the discretion of the court, a trustee who neglects his duties may forfeit the right to compensation for services rendered to the trust. *Jones v. Heritage Pullman Bank & Trust Co.*, 164 Ill. App. 3d 596, 604, 518 N.E.2d 178, 182, 115 Ill. Dec. 653 (1987) ("A trustee which neglects its duties or commits a breach of its obligations may forfeit the right to compensation for services rendered to the trust and may be surcharged for the amount of compensation which it credited to itself."). Illinois courts consider the following factors to determine whether the trustee should receive full compensation or have it reduced or denied:

> 1. Whether the trustee acted in good faith or not;
> 2. Whether the breach of trust was intentional or negligent or without fault;
> 3. Whether the breach of trust related to the management of the whole trust or related only to a part of the trust property;
> 4. Whether or not the breach of trust occasioned any loss; and
> 5. Whether the trustee's services were of value to the trust.

*Id.* (*citing* Restatement (Second) of Trusts, § 244, cmt. c (1959)).

Based on the evidence adduced at trial, I find that the trustee administered the trust in good faith from 1996 onward. His breaches of trust were merely negligent. Some breaches pertained to management of the whole trust, while others related only to part of the trust property. His borrowing pertained only to part of the trust property, but his failure to make tax filings, provide accountings, and establish three separate trusts

related to management of the whole trust. Other than unpaid interest on money borrowed from the trust and held in the trustee's personal account, the plaintiffs allege no loss to the trust from these breaches of duty. In fact, the evidence indicates that the trustee otherwise adequately managed the trust. During the defendant's tenure as trustee, the trust value has increased from $200,000 to $270,000 and it has distributed over $120,000 to the beneficiaries.

I thus find that the trustee has not forfeited his right to reasonable compensation. The plaintiffs have not controverted the trustee's fee calculation; however, they claim and I find there to be duplicative charges in a trustee's fee, a property management fee, and a real estate financial management fee. Also, based upon the transactions to be discussed below and the trustee's overall management of the trust, I find it equitable to reduce his claim for fees and expenses of $51,148 by one-third.

### Interest Due the Trust

I find the trustee owes the trust interest on amounts borrowed, mismanaged, or wrongfully retained.

### A. Interest on Wrongfully Retained CPM Note Proceeds

The trustee invested $104,991.67 of trust funds in notes issued by his employer, CPM. (Def. Ex. 33, Tab 1, p. 8.) When CPM repaid some of these notes, the trustee deposited the payments to his personal bank account thus commingling the trust's money and his personal funds. This was a breach of duty. The trust suffered a loss because it did not benefit from interest the funds would have generated if properly invested. *Szabo v. Parr*, 43 Ill. App. 2d 118, 143-44, 192 N.E.2d 697, 710 (1963) (noting that trustee who committed breach of trust by misappropriating trust money is chargeable with any loss of the trust estate resulting therefrom, including interest, simple or compound, at an appropriate rate and for an appropriate period, payable by trustee to the income beneficiaries). I find the trustee owes the trust simple interest on the money he wrongfully retained, and I calculate it at the prime rate applicable at the time of the deposit in his account. (The other interest calculations are also based on the prime rate at the time of the commission of the breach of duty.)

On February 9, 2001, the trustee deposited a CPM note payment totaling $42,301.37 in his personal bank account. (Def. Ex 33, Tab 4, p. 9.) It remained in his account for two months until it was used to purchase Prestons' interest in the beach house, Transcript, p. 141. The trustee owes the trust $600 in interest. On February 9, 2001, the prime rate was 8.5%. Federal Reserve System Board of Governors, "Selected Interest Rates" in Statistical Release H-15, available at http://www.federalreserve.gov/

releases/h15/data.htm. The other interest rates stated in this letter may be found in the same source.

On March 1, 2001, the trustee deposited two CPM note payments totaling $21,118.14 in his personal bank account. (Def. Ex. 33, Tab 4, pp. 9-10; Transcript, pp. 142-46.) It is difficult to determine when these monies were restored to the trust or the beneficiaries. The trustee had paid trust expenses totaling $3,710 from his personal funds shortly before this deposit. See Attachment A. (Some of these payments could have been offset against the February 9 deposit. For simplicity of calculation, I have chosen to offset all of them against the March 1 deposit.) Therefore, he wrongfully retained $17,408. It seems the trust or the beneficiaries recouped these funds through a series of transactions during the remainder of 2001. I find the trustee owes the trust $740 interest (computed at a rate of 8.5%) on the March 1 deposit.

In sum, the trustee owes the trust $1340 interest on the CPM note proceeds he wrongfully retained in his personal bank account.

## B. Interest on Cash Borrowed from Eric Smack's Schwab Account

Over a period of time, the trustee borrowed $10,000 from Eric Smack's Schwab account. See Attachment B. The trustee immediately "repaid" Eric by crediting Eric in the trust records for the amounts borrowed. (Def. Ex. 33, Tab 2, p. 8, "Net Due Each Beneficiary" and "IOUs Between Beneficiaries.") However, the transfer from the Schwab account (where the money could earn interest) to an "IOU" in the trust register (where the money would not earn interest) deprived Eric of interest the money would have earned in the Schwab account By taking a personal loan from the beneficiary's share, the trustee committed a breach of duty. The trustee owes Enc simple interest on the borrowed money, calculated at the prime rate applicable at the time of transfer. *Szabo, supra.* Again, it is difficult to determine how long the trustee had the use of these funds, but I find from a review of Def. Exh. 33, Tab 2, that the money was not restored until October of 2001. I find the trustee owes Eric $935 interest (computed at a rate of 9.5%) on the amounts borrowed from Eric's Schwab account.

## C. Charge for Increase in Interest Accrued by Eric Smack's Schwab Account

The trustee borrowed $6,000 of the aforementioned $10,000 when Eric's Schwab account balance was negative. (Def. Ex. 33, Tab 1, pp. 7-8; see Attachment C.) In so doing, the trustee increased the interest charged against Eric's Schwab account. (Pl. Mem. of Law 5-6; Def. Ex. 33, Tab 1, pp. 7-8.) Eric's Schwab account achieved a positive balance on November 14, 2000. Though the transfer increased the marginal interest charged to the

Schwab account for a brief period of time only, this act constituted a breach of duty. The trustee is liable to Eric's share of the trust for the resulting loss.

No evidence in the record indicates the interest rate charged to Eric's Schwab account during that time, nor do the plaintiffs suggest the additional amount of interest accrued as a result of the withdrawals. However, I find it equitable to charge the trustee an amount commensurate with the amount he borrowed, the time period for which he increased the interest charge, and the applicable prime rate, which was then 9.5%. Accordingly, the trustee owes the trust $49 for increasing the interest charged to Eric's Schwab account.

## D. *Interest on Trustee's "IOUs"*

The plaintiffs claim the trustee owes interest on amounts listed as owed by him in the trustee's records of "IOUs Between Beneficiaries." (Pl. Mem. of Law 8-9; Def. Ex. 33, Tabs 2, 4.) I disagree. Much of the "IOU" seems to have originated when the trustee charged his share of the trust with the loss on the CPM notes. Trust records also indicate the "IOUs" reflect occasional deposits and withdrawals made as to only one beneficiary's account. The "IOUs" were used to credit or charge the other beneficiaries for the amount received or paid on behalf of the trust. The "IOU" system was necessary as the trust's principal asset for some time has been the real estate; no common trust cash account existed, just separate Schwab accounts for each beneficiary. That the amounts in the trustee's "IOU" column were large and remained so for extended periods of time does not, in itself, establish a breach of trust. Even if it did, there is no evidence that this method of calculating each beneficiary's balance in the trust caused the trust to incur a loss with which the trustee is chargeable.

### Summary

I find the trustee is entitled to fees and expenses of $34,100 and that he owes the trust $1340 in interest and Eric's share of the trust an additional $984 in interest. Mr. Lassiter shall prepare the final decree and submit it within sixty days. It shall provide that the beneficiaries have until July 30 to complete the purchase and sale of their interests in the real property *inter sese*. If that is not done, the property shall be listed with a real estate agent for sale at a price to be determined by the trustee and the real estate agent.